## UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RHODA SPANGLER,<br>    Plaintiff | ) ) ) ) | |
| v. | ) ) | C.A. No. 04-12139NMG |
| UNUMPROVIDENT LIFE INSURANCE<br>COMPANY AND USI CONSULTING GROUP,<br>    Defendants. | ) ) ) ) | |

## AMENDED COMPLAINT AND JURY DEMAND

1.  This action is brought under and jurisdiction is vested in this Court through the Employee Retirement Income Security Act, 29 U.S.C. §1132.

2.  Venue is proper because the plaintiff resides in this District and the defendants have a place of business in this District.

3.  The plaintiff, Rhoda Spangler ("Ms. Spangler"), has at all times material resided at 106 High Street, Acton, Massachusetts.

4.  The defendant UnumProvident Life Insurance Company ("Unum"), has at all material times been the successor to Unum Life Insurance Company, a duly-authorized company in the business of selling various life, health and disability insurance products in Massachusetts and elsewhere, with an office located at 100 Summer Street, Suite 1400, Boston, Massachusetts.

5.  The defendant USI Consulting Group ("USI") is a duly organized corporation, with an office known as "USI New England" located at 12 Gill Street, Woburn, Massachusetts.

1

6.      Burns and Roe Enterprises, Inc. established a Group Life and Accidental Death and Dismemberment Insurance Plan through Unum for the benefit of its employees including Mr. Spangler (the "Plan").

7.      Upon information and belief, USI has at all times material been the plan administrator responsible for processing and administering the Burns and Roe group term life insurance program

8.      The plaintiff is the widow of Ronald C. Spangler ("Mr. Spangler"), who died on January 13, 2003.

9.      Ms. Spangler was diagnosed with multiple sclerosis in the late 1980's. Multiple sclerosis is a degenerative nerve disease.

10.     Prior to his death, Mr. Spangler worked at Burns and Roe.

11.     As an employee of Burns and Roe, Mr. Spangler was a participant and beneficiary of the Plan.

12.     Beginning in calendar year 2000, Mr. Spangler purchased both base coverage (in the amount of his annual salary of $120,000) and supplemental life insurance coverage, in the same amount by completing forms supplied by the Defendant USI for that purpose.

13.     Mr. Spangler paid for $240,000 in coverage through payroll deductions from his salary at Burns and Roe, and the premiums were accepted by the defendants.

14.     Mr. and Ms. Spangler sought the supplemental life insurance coverage to provide additional security for Ms. Spangler in the aftermath of her diagnosis of multiple sclerosis.

15.     After Mr. Spangler's death, Ms. Spangler promptly notified the defendants of his death and submitted documentation and forms as requested.

2

16.     In response, Ms. Spangler received a payment in the amount of $78,650 which equaled 65% of his annual salary. The defendants had deducted, and failed to pay, Ms. Spangler: (a) $42,350, which represents 35% of his annual salary, with respect to the "base coverage" and (b) $121,000 in "supplemental coverage", for a total additional amount claimed but unpaid in the amount of $163,350.

17.     By letter dated April 13, 2003, defendant USI admitted that Mr. Spangler paid premiums for base life insurance coverage plus 65% of supplemental coverage, but the company claimed that he had been "incorrectly included in the list of individuals approved for the additional coverage … which was in fact not in force" at the time of his death. The company also claimed that Mr. Spangler was only entitled to base coverage in the amount of 65% of his salary. A fair and accurate copy of the April 13, 2003 letter is attached hereto as Exhibit A. Further, in the letter, defendant USI acknowledged that an error had been made and offered to refund premiums, plus offered additional funds as well in settlement of any potential claim.

18.     Plaintiff is informed and believes, and therefore avers, that one or both of defendants accepted plaintiff's full premiums and approved Mr. Spangler for both the base and supplemental coverage by including him on the list of individuals approved for the additional coverage.

19.     Despite accepting the premium payments for two years, at no time prior to Mr. Spangler's death did either Unum or USI advise Mr. Spangler that he was not entitled to $240,000 coverage or that any additional documents were necessary for him to obtain full benefits under the Plan.

3

20.    Plaintiff made a formal claim, in writing, dated February 7, 2004 to both defendants. A fair and accurate copy of the February 7, 2004 claim letter is attached hereto as Exhibit B.

21.    By letter dated February 26, 2004, Unum denied the claim. A fair and accurate copy of the February 26, 2004 denial letter is attached hereto as Exhibit C.

22.    Plaintiff sought an appeal, in writing, dated April 16, 2004 to both defendants. A fair and accurate copy of the April 16, 2004 appeal letter is attached hereto as Exhibit D.

23.    By letter dated June 11, 2004, Unum denied the appeal. A fair and accurate copy of the June 11, 2004 denial letter is attached hereto as Exhibit E.

24.    M.G.L.A. c. 175, §134, applicable to group life insurance policies, provides that "the policy shall be incontestable after two years from its date of issue except for non-payment of premiums; and that the insurance on any person insured under the policy shall be incontestable after it has been in force for a period of two years during such person's lifetime except for violation of the conditions of the policy relating to military or naval service in time of war."

## COUNT I

## (RECOVERY OF PLAN BENEFITS--UNUM)

25.    The plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1-24.

26.    The plaintiff has complied with all terms, provisions and conditions of the Plan, including her husband's payment in full of all premiums required to obtain full base life insurance coverage and the supplemental coverage under the Plan.

4

27.    Unum's failure to make pay to Ms. Spangler 35% of the base benefit and 100% of the supplemental benefit is a material breach of the terms of the Plan.

28.    As a result of Unum's failure, plaintiff has sustained substantial damages and hereby seeks recovery of the balance of the base benefit and the supplemental life insurance benefit due under the terms of the Plan.

## COUNT II

## (BREACH OF FIDUCIARY DUTY--USI)

29.    The plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1-28.

30.    As the administrator of the Plan, USI owed a duty of due care to Mr. Spangler in its administration of the Plan.

31.    USI breached its fiduciary duties to Mr. Spangler when it misrepresented Mr. Spangler's eligibility for the full base and supplemental insurance coverage, accepted his application each year for those benefits, collected the premiums from Mr. Spangler for those benefits, and despite being paid in full therefor, failed to notify Mr. Spangler that he was not eligible for such insurance in a timely manner in order to permit him to purchase alternative life insurance elsewhere.

32.    Mr. Spangler relied on the information provided to him by USI, including the representation that he was eligible for the entire amount of base insurance as well as supplemental insurance, paid the premiums thereon, and refrained from obtaining additional life insurance elsewhere which he needed to provide security for Ms. Spangler in the event her multiple sclerosis progressed.

33.    As a result of defendant USI's negligence, Mr. and Ms. Spangler were damaged.

5

COUNT III

(EQUITABLE RELIEF)

34.    Plaintiff realleges and incorporates by reference each and every allegation of paragraphs 1-33.

35.    Unum and USI had a duty to accurately communicate Plan benefits to Mr. Spangler.

36.    Defendants breached their duty by Mr. Spangler by providing him with applications and other information stating that he was eligible to purchase full base insurance benefits and supplemental life insurance benefits when they knew or should have known that such coverage might not be available to Mr. Spangler upon his death.

37.    Unum and USI knew or should have known that Mr. and Ms. Spangler were relying on the information provided by them regarding the life insurance benefits available to the couple under the Plan when Mr. and Ms. Spangler made financial plans for themselves and their family.

38.    As a result of Defendants' misrepresentations, Mr. and Ms. Spangler have been damaged.

39.    By this count and to the extent that relief is otherwise not available to the plaintiff, Ms. Spangler seeks equitable relief pursuant to the provisions of the Employee Retirement Income Security Act of 1974, § 502(a)(3), as amended, 29 U.S.C.A. § 1132(a)(3).

WHEREFORE, the plaintiff respectfully demands the following relief:

a.    that the Court enter judgment in the plaintiff's favor under Count I against Unum in an amount to be determined, together with interest and costs;

6

b.      that the Court enter judgment in the plaintiff's favor under Count II against the
defendant USI in an amount to be determined, together with interest, costs and applicable civil
penalties;

c.      that the Court enter judgment in the plaintiff's favor under Count III against the
defendants Unum and USI, and determine that plaintiff is entitled to equitable relief in an amount
to be determined, together with interest, costs, and applicable civil penalties;

d.      that the Court award the plaintiff reasonable attorneys fees as provided by the
Plan and appropriate statutory authority, and,

e.      that the Court enter such other and further relief as it deems just and proper.

## **CLAIM OF JURY TRIAL**

The Plaintiffs respectfully claim a trial by jury of all of the issues so triable in this
action.

PLAINTIFF RHODA SPANGLER,

By her attorneys,

James E. Grumbach, Esq., BBO# 213740
Theresa Kelly Banash, Esq., BBO #267170
ROTHENBERG, ESTNER, ORSI, ARONE &
GRUMBACH, LLP
Wellesley Office Park
20 William Street, Suite 245
Wellesley, MA  02481
(781) 239-8900

7

_Alfred D. Ellis Ith_

Alfred D. Ellis, Esq.
(BBO #153280)
ZIMBLE & BRETTLER, LLP
21 Custom House Street
Boston, MA 02110
(6l7) 723-2222

## CERTIFICATE OF SERVICE

I, Theresa Kelly Banash, hereby certify that    the foregoing was served on Defendants
by mailing a copy thereof first-class mail, postage prepaid to Defendants' counsel of record as
follows:

John J. Aromando, Esq.               James D. Smeallie
Geraldine Sanchez, Esq.              Damon M. Seligson, Esq.
Pierce Atwood LLP                    Holland & Knight LLP
One Monument Square                  10 St. James Avenue
Portland, ME 04101                   Boston, MA   02116

_Theresa Kelly Banash_

Theresa Kelly Banash

Dated:        December 30, 2004

9

# *EXHIBIT A*



CONSULTING GROUP

Corporate Headquarters:
95 Glastonbury Boulevard
Glastonbury, CT 06033-1296
860.633.5283
860-368-2110 fax
www.usicg.com

Regional Offices:
Greater Boston, MA
Knoxville, TN
New York, NY
Greater Philadelphia, PA
Greater Atlanta, GA

REDEFINING BENEFIT CONSULTING

**Federal Express**
April 13, 2003

Mr. Daren Spangler
106 High Street
Acton, MA 01720

**Re:** Ronald C. Spangler; Supplemental Group Term Life Insurance

Dear Mr.. Spangler,

This follows our prior discussions concerning the supplemental group term life insurance referenced above. As we discussed, Burns and Roe has referred the matter to USI Consulting Group for evaluation and response.

USI Consulting Group is the third party administrator responsible for processing and administering the Burns and Roe Enterprises group term life insurance program and, in particular, your deceased father's 2002 calendar year election to increase life insurance coverage by an additional 65% of salary. As you know, after reviewing our records concerning the supplemental 65% group term life insurance coverage, we learned that he was incorrectly included in the list of individuals approved for the additional coverage. The additional coverage was in fact not in force at the time of your father's death.

Under the terms of group term life insurance program, your father was entitled to base life insurance coverage equal to 65% of his salary. In addition, he was eligible to elect additional supplemental coverage equal to one, two or three times 65% of his salary. However, under the terms of the program, existing participants wishing to elect to increase their coverage must submit an evidence of insurability form which the insurance carrier must approve. This form is provided to electing participants automatically in response to their election. In your father's case, the form relating to the 2002 calendar year election was mailed on December 14, 2001. However, he did not complete or return the form and was therefor not approved for the additional coverage.

The 2002 election was not the first year with respect to which your father submitted for the additional coverage. He also elected to increase his group term life insurance in the same manner for calendar years 2000 and 2001. In each case, he was furnished with the necessary evidence of insurability form, and in each case he failed to complete and submit the form for review. However, with respect to those calendar years, he was correctly not included in the list of approved individuals entitled to the coverage.

We understand that your family is disappointed that the additional coverage is not available. However, we also believe that, because your father had sought and failed to acquire the coverage in two consecutive prior years, he understood that the coverage was contingent on submission and carrier approval of the evidence of insurability form, and that the premium payments deducted from his pay were the result of an administrative error.

USI Consulting Group does not underwrite life insurance, and is not in a position to force the carrier to remit payment on coverage which the carrier did not approve. However, we also understand that it is our administrative error that has lead to confusion surrounding this matter. We believe that our legal liability for this administrative error is limited to ensuring that your father's estate is made whole for amounts deducted from his pay, which we estimate to be approximately $1,100 dollars including interest calculated at 5%. The cost of group term life insurance varies from year to year, and I am having this number verified.

We also understand that the inconvenience which this may have caused your family is attributable to our administrative error. Because of this, we propose to make an additional $4,000 payment to your father's estate in settlement of any claim you may feel that you have against our organization. Again, we do not offer to this because we believe that we have a legal obligation to pay this amount. Rather, we are truly apologetic that the administrative error may have caused your family any inconvenience.

Once you have had a chance to review the above discussion, please don't call me directly at 860-368-2923.

Cordially,

**USI Consulting Group**

Robert J. Plante, J.D.
Senior Vice President

*EXHIBIT B*

# ROTHENBERG ⊐ ESTNER
# ORSI ⊐ ARONE & GRUMBACH, LLP

### A T T O R N E Y S   A T   L A W

*Martin I. Estner • Eric P. Rothenberg • James E. Grumbach*
*Robert Orsi • Nicholas A. Iannuzzi Jr. • Robert L. Arone • Gerald J. Turner*
OF COUNSEL: *Theresa Kelly Banash • Frank M. Di Maria*
*Writer's e-mail: jgrumbach@reoag.com*

February 7, 2004

UNUM Life Insurance Company
Group Life Customer Care Center
P.O. Box 9061
Portland, ME 04104-5046
Attn: Holly Libby, Customer Care Specialist

USI Consulting Group
95 Glastonbury Blvd
Glastonbury, CT 06033-1296
Attn: Robert Plante, Sr. Vice President Legal

Re:    Ronald Spangler (deceased)
       Burns and Roe (employer/plan administrator)

Dear Madam and Sir:

This firm represents the family of Ronald Spangler. As you know, he was employed by Burns and Roe. Mr. Spangler had payroll deductions for life insurance premiums beginning in January 2002. He died on January 13, 2003. After his death, claims were made for both a *base payout* and a *supplemental payout*, each in the amount of one-time (1x) his base salary of $121,000.

Our client received a base payout in the amount of 65% of Mr. Spangler's base salary, based on the fact that his age was over 65 years at the time of his death. We believe that the 35% reduction was erroneous, as is set out below in detail. Further, as to the supplemental payout, according to an April 13, 2003 letter from Mr. Plante of USI, Mr. Spangler was not eligible for the coverage (despite the fact that he paid the premiums, which were accepted), because he failed to complete an "evidence of insurability" form. However, the Policy specifically excludes the need for such form in this situation, by virtue of the following language:

*Evidence of insurability satisfactory to the Insurance Company is required for the amount of the employee's life insurance (Basic & Additional Benefits combined) which:*

*a) is over $400,000*
*b) exceeds 3x annual earnings*

(Policy Specifications, PS-L-3)(emphasis added) It is undisputed that the total amount of insurance *(to wit, $242,000)* did not exceed either (a) $400,000 or (b) 3x Mr. Spangler's salary of $121,000.

---
ROTHENBERG ⊐ ESTNER
ORSI ⊐ ARONE & GRUMBACH, LLP
---

UNUM Life Insurance Company
USI Consulting Group
February 7, 2004
Page 2

As to the basic amount of coverage, we direct your attention to the Policy Specifications, Part 1, Schedule, §1b at page PS-L-2, which states as follows:

If the employee is age 65 or older at the initial enrollment period, his coverage will be 65% of the amounts of insurance he chooses (Basic and Additional Benefits), subject to changes in earnings.

Here, if the Policy were to be construed as USI suggests, then the above language as to "initial enrollments" would be superfluous. General rules of contract (and statutory) construction provide that a contract should be construed as a whole, and with no portion viewed as superfluous. *Roberts v. Enterprise Rent-A-Car Company of Boston, Inc.*, 438 Mass. 187, 193-194, 779 N.E.2d 623, 628 (2002); *Lynch v. Commonwealth*, 54 Mass. App. Ct. 347, 350, 765 N.E.2d 774, 776 (2002).

Furthermore, it appears that the Policy also includes the following language.

Reduction Formula: The pre-age 70 amounts as shown in the schedule reduce to 65% at age 65; and further reduce to 50% at age 70

(Policy Specifications, Part 1, page PS-L-2-3) This language is ambiguous. What does the phrase "[t]he pre-age 70 amounts as shown in the schedule" mean? We do not believe that a typical plan participant would understand it to mean the basic amount of life insurance benefits set out in the schedule. In Massachusetts, any ambiguities are to be construed against the drafter, to wit, UNUM, as determined by the objectively reasonable insured would expect. E.g., *Citation Insurance Co. v. Gomaz*, 426 Mass. 379, 381 (1998); *Western Alliance v. Gill*, 426 Mass. 115, 117 (1997). Hence, we do not believe that the Policy language supports denial of 35% of the basic benefits.

Accordingly, kindly accept this letter as a formal claim for 35% of the basic benefits of $121,000 (to wit, $42,350) plus 100% of the supplemental benefits for Mr. Spangler (to wit, $121,000), for a total balance due of $163,350.

By virtue of this letter, we formally reject the settlement offer of approximately $5,100 set forth by Mr. Plante in his letter of April 13, 2003. In the event that this demand is not accepted, kindly send us copies of all materials setting forth the precise appeal procedure (in terms of claims against either of the addressees) which we must follow.

This letter is sent pursuant to the provisions of M.G.L.A. chapters 93A and 176D. Under the provisions of those statutes, your respective companies have thirty (30) days to respond to this letter with a reasonable tender of settlement. If you fail to do so, you may be subject to liability for double or treble damages. Thank you in advance for your prompt attention to this matter. Kindly direct all

ROTHENBERG ⌐ ESTNER
ORSI ⌐ ARONE & GRUMBACH, *LLP*

UNUM Life Insurance Company
USI Consulting Group
February 7, 2004
Page 3

responses to the undersigned.

Very truly yours,

James E. Grumbach

cc:    Client
       Alfred D. Ellis, Esq.

*EXHIBIT C*



UNUMPROVIDENT CORPORATION
Group Life Customer Care Center
PO Box 9061
Portland, ME 04104-5046
FAX: 1-207-575-6096

February 26, 2004


RHODA SPANGLER
C/O JAMES E GURMBACH
ATTORNEY AT LAW
20 WILLIAM ST
WELLESLEY MA 02481-4104


Dear Mrs. Spangler:

We wrote to you on January 28, 2003, regarding the life insurance claim submitted on behalf of your husband, Ronald Spangler. We have now completed the claim review and determined that additional benefits are not payable and would like to take this opportunity to explain to you how I arrived at my decision.

The original claim was submitted for $242,000.00. Payment totaling $78,650.00 plus applicable interest has been sent to you under separate cover. This letter addresses the remaining $163,350.00.

Enclosed is a copy of the applicable provisions of Unum Life Insurance Company of America's group life insurance policy. These provisions explain that if an active employee reaches age 65 to 69 years of age while insured, their life insurance will be based on the salary as of their date last worked, and then reduced to 65% of that benefit amount.

In addition, I have enclosed the policy provision that explain if an employee does not elect additional benefits when they first become eligible, the amount of the life insurance an employee elects during an annual enrollment will need evidence of insurability submitted to, and approved by, Unum Life Insurance Company of America.

The policy held by Barns and Roe Enterprises, Inc. became effective with Unum Life Insurance Company of America on June 1, 1996. At this time your husband did not elect additional benefits, and chose only to carry the basic employer paid amount of one times his annual earnings. Information from Burns and Roe Enterprises, Inc. indicates your husband elected three times his annual earnings for the first time during the 2002 annual enrollment period.

The policy states that evidence of insurability must be submitted to the Insurance Company for approval with any written application for insurance if at annual enrollment an employee applies for an increase in the amount of employee life insurance. Evidence of insurability was not submitted to Unum Life Insurance Company of America or approved on the increased benefit amount elected on your husband's annual enrollment in 2002. Therefore, the $121,000.00 increase in life insurance never became effective.

In addition, your husband's basic life insurance coverage was based on one times his annual earnings rounded to the next higher $1,000.00. Information from your husband's employer indicates your husband's salary was $120,000.14. The policy provisions as stated above require a reduction of this

Page 2

benefit to 65% or $78,650.00. The benefit amount previously sent to you in January 2003 is the total amount due to you and no further benefits are payable.

I am notifying Burns & Roe to make any appropriate premium adjustments.

Our action at this time is not a waiver of any and all other rights and defenses which our company may have under the provisions of these policies. In fact, specification of the foregoing grounds for denial shall not be exclusive. The company reserves all of its rights and waives none regarding this matter.

### Appeal Procedures

If you, or your authorized representative, wish to appeal a denied claim, you must file a written appeal. We must receive this appeal within 90 days from the date of this letter. You should send your written request for an appeal to the following address:

**UnumProvident**
**Portland Customer Care Center**
**Quality Performance Support – Appeals Unit**
**P.O. Box 9548**
**Portland, ME 04122-5058**

Please include the number that identifies the claim, **0099451144**, and the policy number, **506777**. You may submit written comments, documents, records or other information in support of your appeal. Upon request and free of charge, you may have reasonable access to, and copies of, all relevant documents, as defined by applicable U.S. Department of Labor regulations.

The appeal review will take into account all new information, whether or not presented or available at the initial determination. We will make a full and fair review of the claim and may require additional documents as we deem necessary or desirable in making such a review.

A decision on appeal will be made not later than 60 days after we receive your written request for appeal. If special circumstances require an extension of time for a decision on appeal, the review period may be extended by an additional 60 days. You will be notified of the reasons for the extension and the date by which we expect to make a decision. If an extension is required due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the necessary information and the date by which you need to provide it to us. The 60-day extension of the appeal review period will begin after you have provided that information. If you fail to deliver the requested information with the time specified, we may decide your appeal without that information.

If your appeal is denied, the notice of our decision will include the following information:
a.  the specific reason(s) for the appeal determination;
b.  a reference to the specific Plan provision(s) on which the determination is based;
c.  a statement that you are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim;

Page 3

d.  a statement of your right to bring a civil suit under section 502(a) of ERISA; and
e.  a statement that "You or your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor office and your State insurance regulatory agency."

Notice of the denial may be provided in written or electronic form.  Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

If we do not receive your written appeal with 90 days of the date of this letter, our claim determination will be final.

I regret this claim decision could not have been more favorable to you.  If you have any questions about the review process, please do not hesitate to call me at 1-800-445-0402, ext. #53166.

Sincerely,


Brenda J. Brown, Senior Customer Care Specialist
Unum Life Insurance Company of America


enclosures

cc:   Burns & Roe
      USI Consulting Group
      file

Page 4

**Pertinent Policy Provisions**
**Regarding Evidence of Insurability**
**From Policy Issued to**
**Barns and Roe Industries, Inc.**

" SECTION I – POLICY SPECIFICATIONS

PART I

1.  LIFE AND ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS – Employees only

   b.  Amounts of Insurance

   Basic Benefits:

   Life Amount

   Class 1    1x annual earnings
              To a maximum of $300,000

   i.      Life Insurance (Basic and Additional Benefits combined):

           Reduction Formula:   The pre-age 70 amounts as shown in the schedule
                                reduce to 65% at age 65;

   SECTION III - ELIGIBILITY AND EFFECTIVE DATES

   C.  ENROLLMENT

       An employee may enroll or change his coverage only during an enrollment period or
       because of a change in status as follows:

2.  Annual Enrollment Period

During each annual enrollment period, an employee may choose one of the following for the next
policy year

   b.  at an annual enrollment period or following a change in status, an employee applies for an
   increase in the amount of employee life insurance.

4.  Evidence of Insurability

Evidence of Insurability must be submitted to the Insurance Company for approval with any
written application for insurance if:

Page 5

        c.   at an annual enrollment period or following a change in status, an employee applies for an increase in the amount of employee life insurance.

D.   EFFECTIVE DATES OF INSURANCE

        2.   For Coverage Applied For During Annual Enrollment Periods:

            An employee will be insured for the selected coverage on the late of the following dates:

        b.   the date the Insurance Company gives its approval if evidence of insurability is required.

Evidence of Insurability means a statement or proof of an employee's medical history upon which acceptance for insurance will be determined by the Insurance Company."

# *EXHIBIT D*

# ROTHENBERG ▭ ESTNER
# ORSI ▭ ARONE & GRUMBACH, LLP

### A T T O R N E Y S   A T   L A W

*Martin I. Estner • Eric P. Rothenberg • James E. Grumbach*
*Robert Orsi • Nicholas A. Iannuzzi Jr. • Robert L. Arone • Gerald J. Turner*
**OF COUNSEL:** *Theresa Kelly Banash • Frank M. Di Maria*
*Writer's e-mail: jgrumbach@reoag.com*

April 16, 2004

UnumProvident
Portland Customer Care Center
Quality Performance Support – Appeals Unit
P.O. Box 9548
Portland, ME 04122-5058

USI Consulting Group
95 Glastonbury Blvd
Glastonbury, CT 06033-1296
Attn: Robert Plante, Sr. Vice President Legal

> Re:   Ronald Spangler (deceased)
>        Burns and Roe (employer/plan administrator)
>        Unum Claim number 0099451144
>        Policy number 506777

Dear Sirs and/or Madam:

This firm represents the family of Ronald Spangler. The purpose of this letter is to request a further appeal, in response to Unum Provident's letter of February 26, 2004.

Initially, we reiterate and incorporate all matters set out in our letter of February 7. Second, we note that you have failed to respond in any manner to certain of the claims we made in our letter. All you have done is to reiterate the terms of the policy on which you focus, and not on the balance of the policy.

First, we would like to discuss the issue of "evidence of insurability". You fail to mention, or to respond to our point, that the policy contains the following language:

*Evidence of insurability satisfactory to the Insurance Company is required for the amount of the employee's life insurance (Basic & Additional Benefits combined) which:*

*a)  is over $400,000*
*b)  exceeds 3x annual earnings*

(Policy Specifications, PS-L-3)(emphasis added)  The total amount of insurance *(to wit, $242,000)* did not exceed either (a) $400,000 or (b) 3x Mr. Spangler's salary of $121,000.  We believe that this

---

**WELLESLEY OFFICE PARK**

20 William Street, Wellesley, Massachusetts 02481-4104 · 781-239-8900 · Facsimile 781-239-8909 · www.reoag.com

ROTHENBERG □ ESTNER
ORSI □ ARONE & GRUMBACH, *LLP*

Unum Provident
USI Consulting Group
April 16, 2004
Page 2

language either overrides the language you have cited in section 4 or, alternatively, renders the language you have cited ambiguous. In Massachusetts, any ambiguities are to be construed against the drafter, to wit, UNUM, as determined by the objectively reasonable insured would expect. E.g., *Citation Insurance Co. v. Gomaz*, 426 Mass. 379, 381 (1998); *Western Alliance v. Gill*, 426 Mass. 115, 117 (1997).

A review of the Policy indicates, under "Certificate of Coverage", that it is "written in plain English". Clearly, the language (selected by Unum Provident) has been simplified for purposes of clarity. The language we have quoted above indicates that no evidence of insurability is required in this instance, since the amount of coverage exceeds neither $400,000 nor 3x Mr. Spangler's annual earnings. Further, Mr. Spangler paid the premiums for the additional benefit and they were accepted and never returned. We firmly believe that this amounts to either waiver or estoppel, and is an additional basis on which Mr. Spangler should be able to prevail. Hence, we ask that you reconsider your decision to deny Mr. Spangler's *additional benefits*.

As to the basic amount of coverage, you neglect to cite, or to respond to our argument, relating to the following language from the Policy Specifications, Part 1, Schedule, §1b at page PS-L-2:

If the employee is age 65 or older at the initial enrollment period, his coverage will be 65% of the amounts of insurance he chooses (Basic and Additional Benefits), subject to changes in earnings.

If the Policy were to be construed as you suggest, then the above language as to "initial enrollments" would be *superfluous*. General rules of construction provide that a contract should be construed as a whole, with no portion viewed as superfluous. *Roberts v. Enterprise Rent-A-Car Company of Boston, Inc.*, 438 Mass. 187, 193-194, 779 N.E.2d 623, 628 (2002); *Lynch v. Commonwealth*, 54 Mass. App. Ct. 347, 350, 765 N.E.2d 774, 776 (2002).

Further, you fail to respond to the ambiguity posed by the following language:

Reduction Formula: The pre-age 70 amounts as shown in the schedule reduce to 65% at age 65; and further reduce to 50% at age 70

(Policy Specifications, Part 1, page PS-L-2-3) What does the phrase "[t]he pre-age 70 amounts as shown in the schedule" mean? With all due respect, we do not believe that this "plain English" indicates to a typical plan participant that the basic insurance is reduced to 65% at age 65. As indicated above, any ambiguities are to be construed against the insurer.

*EXHIBIT E*



June 11, 2004


JAMES GRUMBACH
ROTHENBERG, ESTNER, ORSI, ARONE & GRUMBACH
WELLESLEY OFFICE PARK
20 WILLIAMS STREET
WELLESLEY, MA 02481-4104


RE: Ronald Spangler
    Claim Number: 0099451144
    Policy Number: 506777

Dear Attorney Grumbach:

Thank you for your letter requesting a review of the denial of the life insurance claim that Rhoda Spangler submitted on behalf of her husband, Ronald Spangler. We have completed our review and have determined that the decision to deny additional life benefits in the amount of $163,350.00 to Mrs. Spangler was appropriate and we are upholding that decision.

According to the policy under which Ronald Spangler was covered:

1.    LIFE AND ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS –
      Employees Only

      b. Amounts of Insurance

         Basic Benefits:

                           Life Amount

         CLASS 1        1x annual earnings to a maximum of $300,000

i.    Life Insurance (Basic and Additional Benefits combined):

      Reduction Formula:    The pre-age 70 amounts as shown in the schedule reduce to 65%
                            at age 65; and further reduce to 50% at age 70

C.    ENROLLMENT

An employee may enroll or change his coverage only during an enrollment period or
because of a change in status as follows:

2.    Annual Enrollment Period

During each annual enrollment period, an employee may choose one of the following for
the next policy year:

a.  a decrease in coverage;
b.  an increase in employee life coverage to any level with evidence of insurability
    satisfactory to the Insurance Company; or
c.  the same level of coverage.

Any amount of insurance for which evidence of insurability is required will be effective
on the date the Insurance Company gives its approval.

4.    Evidence of Insurability

Evidence of Insurability must be submitted to the Insurance Company for approval with
any written application for insurance if:

a.  an individual was previously declined by the Insurance Company;
b.  an employee selects an amount of employee life insurance (Basic and Additional
    Benefits combined) that exceeds 3x annual earnings; or
c.  at an annual enrollment period or following a change in status, an employee applies
    for an increase in the amount of employee life insurance.

D.    EFFECTIVE DATES OF INSURANCE

2.    For Coverage Applied For During Annual Enrollment Periods:

An employee will be insured for the selected coverage on the later of the following dates:

a.  the first day of the next policy year; or
b.  the date the Insurance Company gives its approval if evidence of insurability is
    required.

Evidence of Insurability means a statement or proof of an employee's medical history upon which
acceptance for insurance will be determined by the Insurance Company.

On appeal, a complete review of Mr. Spangler's file has been conducted. Mrs. Spangler has received payment in the amount of $78,650.00 plus applicable interest. She is claiming additional life benefits in the amount of $163,350.00.

Based on the information in Mr. Spangler's file, he applied for supplemental life insurance at one times his annual earnings during the 2002 annual enrollment period. Thus, according to the policy provision under Annual Enrollment Period previously quoted above:

> b.    an increase in employee life coverage to any level with evidence of insurability satisfactory to the Insurance Company;...

As Mr. Spangler did not submit evidence of insurability to our Company, the $121,000.00 increase in his life insurance was never approved by our Company. Therefore, Mrs. Spangler is not eligible to receive that additional life insurance benefit. We will again notify Mr. Spangler's Employer to make any appropriate premium adjustments.

With respect to the 65% that Mrs. Spangler received out of the $121,000.00, the policy states:

> Reduction Formula:    The pre-age 70 amounts as shown in the schedule reduce to 65% at age 65; and further reduce to 50% at age 70

As the policy provision states, at age 65, the pre-age 70 amounts shown in the schedule reduce to 65%. Because Mr. Spangler was 65 at the time of his death, his life insurance benefit was reduced to 65%.

With respect to your prior letter dated February 7, 2004, our Company did respond to your letter on February 10, 2004.

Based on our review, Mrs. Spangler is not entitled to any additional life insurance benefits and we are upholding our prior determination.

You are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to this determination.

If you dispute this determination, you have a right to bring a civil suit under Section 502 (a) of the Employee Retirement Income Security Act of 1974.

Sincerely,

Patricia Tetreault
Lead Appeals Specialist
cc:  file